UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GEOTAG, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:11-cv-00570-MHS |
| | § | |
| AROMATIQUE, INC.; *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS AT&T SERVICES, INC. AND AT&T MOBILITY LLC'S MOTION FOR SEVERANCE AND TRANSFER TO THE NORTHERN DISTRICT OF TEXAS**

AT&T asks the Court to sever the claims involving AT&T and GeoTag and transfer the dispute to Dallas, the most convenient forum. Dallas is more convenient than Tyler for every single likely witness, including GeoTag's own witnesses. The Dallas court can also subpoena at least two important potential prior art witnesses, while AT&T is not aware of any third-party witnesses within the subpoena power of this Court. AT&T will call its own, unique witnesses at trial, as it developed its own store-locator functionality in-house, and no other defendant uses it. And Dallas has a strong local interest in this patent infringement suit against one of its most prominent corporate citizens. The private and public interest factors point to resolution of this matter in Dallas.

**PROCEDURAL BACKGROUND**

AT&T is among several hundred defendants GeoTag has sued in the Eastern District of Texas over an eighteen-month period, beginning in July 2010. GeoTag filed only nineteen suits against these hundreds of unrelated defendants, and in light of the Federal Circuit's recent opinion, *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), severance of the claims involving

AT&T is appropriate.[1]   With the claims against AT&T severed, the path is clear for resolution of this dispute in Dallas, the most convenient forum.

GeoTag sued at least three different general groups of defendants, alleging infringement of U.S. Patent No. 5,930,474 (the "'474 Patent"): defendants that provide online yellowpages-type services (e.g. yellowpages.com) (the "Online Directory Defendants"); defendants that provide online locator services for their brick-and-mortar locations (e.g., the "Find a Store" feature on att.com) ("Store Locator Defendants"); and defendants that provide software for online store locator services ("Software Defendants").  The Store Locator Defendants comprise the biggest group of defendants and use a variety of technologies to provide the accused services. AT&T developed its store locator technology in-house and does not provide its technology to any other defendants.  *See* Ex. 1, AT&T Aff. ¶ 4.

Faced with these suits against hundreds of Store Locator Defendants, including many of their own customers for locator services, Microsoft and Google brought a declaratory judgment action in Delaware almost a year and a half ago.[2]  *See Microsoft Corp. v. GeoTag, Inc.*, No. 1:11-CV-175-RGA (D. Del.).  The Delaware court denied GeoTag's motion to transfer that suit here,

---

[1] GeoTag does not oppose severance of the AT&T entities, but opposes severance without simultaneous pretrial consolidation with the other actions pending in the Eastern District of Texas

[2] In its infringement contentions, GeoTag also accuses the career locator technology of numerous defendants, including AT&T, despite the explicit language in the '474 patent's description of the preferred embodiment, distinguishing the claimed invention from "systems which have geographically differentiated listings for the same topic (***such as job search databases which include information about jobs in different cities***)." Ex. 2, Rumford Decl. Ex. A, '474 patent, col. 5, lines 60-63 (emphasis added).  AT&T does not provide its own career locator functionality, and a third party that powers AT&T's career locator functionality has filed a declaratory judgment action against GeoTag in Delaware.  *See Taleo Corp. v. GeoTag, Inc.*, 12-CV-621-RGA (D. Del.).

those parties are in the midst of discovery, and the *Markman* hearing is set for November 20 of this year.[3]

For a number of reasons, there has been little activity in the Eastern District of Texas cases since GeoTag filed suit. The Store Locator Defendants and the Software Defendants have not yet provided any discovery to GeoTag, and many of the Store Locator Defendants seek a stay of those actions, including the action against AT&T, pending the outcome of the Microsoft/Google declaratory judgment suit. The Court has scheduled a case management conference for July 11, 2012, and the parties will file their proposals on how to manage these cases on June 27, 2012.

While it does not appear that the parties will reach any agreement on the best way forward on these cases, it is clear that no one believes all these hundreds of unrelated defendants, with different accused services, can or should be tried together. As for the AT&T claims, Dallas is the most convenient location to hear the dispute. As detailed below, Dallas is closer than Tyler to the witnesses for both parties as well as potential third-party witnesses,[4] and it has a strong local interest in the resolution of this infringement claim against one of its most prominent corporate citizens.

## ARGUMENT

Because the Northern District of Texas is a "clearly more convenient" venue for the trial of this case, the Court should order a transfer. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). "For the convenience of parties and witnesses, in the

---

[3] The '474 Patent was previously construed by Magistrate Judge Everingham in a case involving another online yellowpages provider, filed by GeoTag's predecessor-in-interest in 2006. *See Geomas (Int'l) Ltd. v. Idearc Media Services-West, Inc.*, No. 2:06-475-CE, 2008 Markman 4966933 (E.D. Tex. Nov. 20, 2008).

[4] This case is currently set for trial in Tyler. *See* Dkt. 432. If it ends up being tried in Marshall, where it was filed, the distances for the witnesses will be even farther.

interest of justice," the Court may transfer this action to another district court "where it might have been brought."[5]  28 U.S.C. § 1404.  The plaintiff's choice of venue is not a distinct factor in the 1404 analysis.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (granting petition for writ of mandamus where district court denied motion to transfer and incorrectly afforded the plaintiff's chosen venue "considerable deference").  Rather, the Court analyzes both private and public interest factors, which, on balance, point to the Northern District of Texas here.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009) (applying Fifth Circuit test of public and private interest factors).

### I.   The private interest factors heavily favor transfer to the Northern District of Texas.

The private interest factors point to Dallas as the more convenient forum.  The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* at 1342.  The location of witnesses and documents as well as the presence of at least one third-party witness in the Northern District of Texas all clearly favor transfer.

#### A.   The sources of proof are closer to Dallas than to Tyler.

The parties' documents are closer to Dallas than to Tyler.  "In patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Id.* at 1345.  The Fifth and Federal Circuits have both held that the physical location of likely evidence, even if it is electronically stored and can be transported relatively easily, is a factor that cannot

---

[5] GeoTag's suit against AT&T could have been brought in the Northern District of Texas, home to AT&T Services' corporate headquarters and retail stores that can be found using the store locator functionality, where personal jurisdiction and venue are proper.

be ignored. *See In re TS Tech USA Corp.*, 551 F.3d at 1321. AT&T Services' corporate headquarters are in Dallas, less than two blocks from the federal courthouse, and the lawyer overseeing the collection of evidence for AT&T works there.[6] Collecting and preparing evidence for trial would therefore be easier in Dallas than in Tyler. AT&T is not aware of any AT&T or third-party documents in the Eastern District of Texas. Ex. 1, AT&T Aff. ¶ 12. GeoTag's headquarters are in Frisco, a mere 24 miles from the Dallas courthouse.[7] All GeoTag's electronic documents are at its headquarters, and its hard-copy documents are also either there or at GeoTag's law firm (which is now in Dallas). *See* Ex. 2, Rumford Decl. Ex. E, Howorth Decl. Accordingly, Dallas is closer to the sources of proof.

  **B.**  **Compulsory process is not available in the Eastern District of Texas for any witness.**

AT&T is not aware of a single potential third-party witness in the subpoena power of the Eastern District of Texas. AT&T Aff. ¶ 11. There are, however, two likely witnesses about a key piece of prior art, the SuperPages system, within the subpoena power of only the Northern District of Texas; one of these witnesses is SuperMedia, the company that developed the SuperPages system.[8] The Federal Circuit has termed the venue's subpoena power an "important factor." *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). Under Rule 45(b)(2), a federal court may issue a subpoena anywhere within its district, or within 100 miles of the venue. Where this range covers more potential third-party witnesses in the proposed district than in the original one, transfer is favored. *In re Genentech, Inc.*, 566 F.3d at 1345 ("The fact that the

---

[6] *See* Ex. 1, AT&T Aff. ¶ 3 & Ex. 2, Rumford Decl. Ex. B (showing distance from One AT&T Plaza to Dallas courthouse).

[7] *See* http://www.geotag.com/Contact.html (listing address of GeoTag's corporate address in Frisco), last visited June 19, 2012; Ex. 4, Rumford Decl. Ex. C (showing distance from GeoTag's corporate office to Dallas courthouse).

[8] *See* Ex. 1, AT&T Aff. ¶ 9; Ex. 2, Rumford Decl. Ex. D (Super Media address in Dallas).

transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly."). This factor thus favors transfer to the Northern District of Texas.

C.  **The cost of attendance for willing witnesses is less in Dallas.**

Dallas is a more convenient forum for every potential witness. Dallas is closer than Tyler to both GeoTag's and AT&T Services' headquarters. *See In re Acer Am. Corp.*, 626 F.3d at 1255 (granting petition for writ of mandamus and finding denial of motion to transfer was clear abuse of discretion, in part, because the plaintiff corporation and most of its witnesses were located closer to the transferee district than to the Eastern District of Texas). GeoTag's witnesses would not have to stay overnight for proceedings in Dallas. AT&T and GeoTag witnesses could largely wait their turn to testify at their respective offices, rather than at the courthouse.

Dallas is also more convenient for the likely out-of-state witnesses. As the Federal Circuit recently noted, in issuing a writ of mandamus regarding an Eastern District of Texas court's denial of a motion to transfer to Dallas, "maintaining trial in the Marshall Division would require witnesses to undergo the cost, time, and expense of travel, which would be significantly reduced if this case was transferred to the Dallas Division." *In re Verizon Business Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (noting that this factor favored transfer to the Northern District of Texas where there were no witnesses within 100 miles of the Marshall Division). Likely witnesses for AT&T are in Bothell, Washington; Oklahoma City, Oklahoma; and Atlanta, Georgia. Ex. 1, AT&T Aff. ¶¶ 6–8. The likely third-party witnesses that will testify about the career locator services functionality are in California and Georgia. *Id.* ¶ 5. The non-party patent inventors are in Illinois and California, Ex. 2, Rumford Decl. Ex. E, Howorth Decl. ¶ 5, and additional witnesses with knowledge about the prior art SuperPages and NYNEX systems are in Massachusetts, Ex. 1, AT&T Aff. ¶ 10. Witnesses traveling to Texas from out-of-

state could fly directly into Dallas, without adding four hours of travel time to Tyler and back.[9] This factor thus strongly favors Dallas.

### D. The practical problems render Dallas easier and more efficient.

Given the hundreds of defendants GeoTag has sued and the tens of pending cases in the Eastern District of Texas, resolution here will not be easy for any party or the Court. The judicial economies that might be saved with one judge presiding over multiple patent infringement actions may not be present here, in light of the differing technologies at issue. The various systems of the hundreds of defendants may make even potentially common issues like claim construction and invalidity a briefing morass, let alone individual issues like infringement, willfulness (which now requires a threshold determination by the Court),[10] and damages. And AT&T may have to wait for resolution in the Eastern District of Texas, as many of the Store Locator Defendants that are Microsoft or Google customers have sensibly requested a stay pending the resolution of the Microsoft and Google declaratory judgment action.

Plus, even the potential judicial economy is not enough to keep a case in an inconvenient forum. The judge presiding over the Microsoft and Google declaratory judgment action in Delaware rejected GeoTag's bid to transfer that case to the Eastern District of Texas, despite noting the judicial economy that could be gained from having all the cases tried before one court. *See Microsoft Corp. v. GeoTag, Inc.*, --- F. Supp. 2d ----, 2012 WL 114128, at *6 (D. Del. Jan. 13, 2012).

---

[9] *Compare* Ex. 2, Rumford Decl. Ex. F (distance from DFW airport to Dallas courthouse), *with id.*, Ex. G (distance from DFW airport to Tyler courthouse).

[10] *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, --- F.3d ---, 2012 WL 2149495 (Fed. Cir. June 14, 2012).

In another example, in a recent case involving five suits against different defendants, filed by the same plaintiff on the same day and asserting infringement of the same patent, the court granted a motion to transfer only one of the suits from Dallas to Austin, noting: "While the Court recognizes Plaintiff's position that judicial economy would be served by having one judge in one district construe the patent terms, this Court concludes that that factor alone should not override the convenience factors otherwise applicable to 28 U.S.C. § 1404(a), and there are various case management techniques that can be employed to minimize the consequence of the cases proceeding in different districts." *See Cian IP LLC, v. Nat'l Instruments Corp.*, 1:12-CV-365-M, Order Granting Transfer of Venue (Dkt. 30) at 2, (W.D. Tex. Apr. 24, 2012).

There are no other reasons to keep the case in the Eastern District of Texas. Since the prior litigation involving the patent-in-suit in the Eastern District of Texas was before a different judge, who is no longer on the bench, it provides no reason to keep this suit in the Eastern District. *See Verizon*, 635 F.3d at 562 (issuing writ of mandamus to district court that denied transfer because of its own previous handling of a lawsuit on the same patent that settled more than five years before the filing of the current case and before a reexamination of the patent). And both this district and the Northern District of Texas have local rules streamlining patent cases.

Dallas is more convenient than Tyler for every witness; it is closer to the sources of proof; and the Eastern District of Texas does not have subpoena power over any third-party witness. This convenience outweighs any potential economies from keeping every named defendant in the sea of defendants in the Eastern District of Texas.

## II.     The public interest factors favor transfer.

The public interest factors also favor resolution in the Northern District of Texas. The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2)

the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation and alteration omitted).

### A.  The Northern District of Texas courts are less congested.

The first factor involves the relative docket loads and the speed with which cases are resolved in each forum.  This factor favors transfer to the Northern District of Texas, as the Northern District of Texas has fewer cases per judgeship and a faster median time to trial.[11]  *See Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963) ("[A] trial judge weighing the interests of justice could legitimately consider the condition of his court's docket an important factor.").

### B.  Dallas Has a Strong Local Interest in the Resolution of This Dispute.

Dallas has a strong local interest in the resolution of the patent infringement claims against one of its most prominent corporate citizens.  AT&T Services' corporate headquarters are in Dallas and AT&T employs thousands of area residents.  Ex. 1, AT&T Aff. ¶ 3.  The forum has a local interest where the party is a prominent company within the district.  *See Balthaser Online, Inc. v. Kimberly-Clark Corp.*, No. 2:09-CV-188-TJW, 2011 WL 1235143, at *4 (E.D. Tex. Mar. 30, 2011) (Ward, J.) (granting motion to transfer to the Southern District of Texas and finding that residents of district had particularized interest in deciding a patent infringement dispute in the district where the defendant was a prominent local company with headquarters in the district).

---

[11]  *See* Ex. 2, Rumford Decl. Ex. H (excerpts of Federal Court Management Statistics, District Courts (September 2011)).  The median time to trial in the Northern District of Texas is 20.2 months compared to 23.7 in the Eastern District of Texas, and the average number of pending cases per judgeship as of September 2011 was 407 in the Northern District, versus 488 in the Eastern District.  *Id.*

While GeoTag's headquarters are in the Eastern District of Texas, it has only a handful of employees. *See GeoTag, Inc. v. Frontier Commc'ns Corp.*, 2:10-CV-265-MHS, Dkt. 141 at 4 (E.D. Tex.). The Northern District of Texas thus has a stronger local interest in resolution of this dispute. *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (Gilstrap, J.) (granting motion to transfer and finding that forum with more party employees had a greater local interest and weighed in favor of transfer to that forum).

### C. The Familiarity of the Forum and Conflicts of Laws Factors Are Neutral.

The third and fourth factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws of the application of foreign law—are neutral, as both courts are well-equipped to apply federal patent law.

## CONCLUSION

The Dallas Division of the Northern District of Texas is a clearly more convenient forum, as the private interest factors and the public interest factors weigh in favor of transfer. AT&T respectfully asks the Court to sever and transfer the suit between AT&T and GeoTag to the Dallas Division of the Northern District of Texas.

| | |
|---|---|
| Dated: June 21, 2012<br><br>Lawrence Augustine Phillips<br>Texas Bar No. 15937755<br>larryphillips@siebman.com<br>**SIEBMAN, BURG, PHILLIPS, & SMITH LLP**<br>300 N. Travis Street<br>Sherman, TX 75090-9969<br>Telephone:  903-870-0070<br>Facsimile:  903-870-0066<br><br><br><br>Michael C. Smith<br>Texas Bar No. 18650410<br>michaelsmith@siebman.com<br>**SIEBMAN, BURG, PHILLIPS, & SMITH LLP**<br>113 E. Austin Street<br>P.O. Box 1556<br>Marshall, TX 75671<br>Telephone:  903-938-8900<br>Facsimile:  903-767-4620 | */s/ Timothy S. Durst*<br>Timothy S. Durst<br>Lead Attorney<br>Texas Bar No. 00786924<br>tim.durst@bakerbotts.com<br>Chad C. Walters<br>Texas Bar No. 24034730<br>chad.walters@bakerbotts.com<br>Susan Cannon Kennedy<br>Texas Bar No. 24051663<br>susan.kennedy@bakerbotts.com<br>**BAKER BOTTS L.L.P.**<br>2001 Ross Avenue, Suite 600<br>Dallas, Texas  75201-2980<br>Telephone: 214-953-6500<br>Facsimile: 214-953-6503<br><br>Christopher W. Kennerly<br>Texas Bar No. 00795077<br>chris.kennerly@bakerbotts.com<br>**BAKER BOTTS L.L.P.**<br>620 Hansen Way<br>Palo Alto, California 94304<br>Telephone: 650-739-7502<br>Facsimile: 650-739-7601<br><br>Benjamin R. Johnson<br>Texas Bar No. 24065495<br>ben.johnson@bakerbotts.com<br>**BAKER BOTTS L.L.P.**<br>98 San Jacinto Boulevard, Suite 1500<br>Austin, TX   78701-4078<br>Telephone: 512-322-2500<br>Facsimile: 512-322-2501<br><br>**ATTORNEYS FOR DEFENDANTS<br>AT&T MOBILITY LLC and<br>AT&T SERVICES, INC.** |

## CERTIFICATE OF CONFERENCE

The undersigned attorney hereby certifies that he has complied with the meet and confer requirement in Local Rule CV-7(h) and this motion is opposed.  Specifically, Mr. Buether said that he opposes transfer, that "GeoTag is not opposed to having the Court 'deem severed' its claims against the defendants in the GeoTag litigation in conjunction with the simultaneous consolidation of those claims (and related counterclaims) for pretrial purposes," and that "GeoTag does not oppose severance of the AT&T entities, but opposes severance without simultaneous pretrial consolidation with the other actions pending in the Eastern District of Texas."

*/s/ Timothy S. Durst*
Timothy S. Durst

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 21st day of June, 2012, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail and first class mail on this same date.

*/s/ Susan Cannon Kennedy*
Susan Cannon Kennedy
