**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GEOTAG, INC. § | |
| § | |
| PLAINTIFF, § | |
| § | CIVIL ACTION NO. 2:10-cv-00570 |
| v. § | |
| § | |
| AROMATIQUE, INC., ET AL. § | |
| § | JURY TRIAL DEMANDED |
| DEFENDANTS. § | |
| § | |

**GEOTAG, INC.'S RESPONSE TO DEFENDANTS AT&T SERVICES, INC. AND AT&T
MOBILITY LLC'S MOTION TO SEVER AND TRANSFER**

Plaintiff GeoTag, Inc. ("GeoTag") files this Response to the Motion to Sever and Transfer filed by Defendants AT&T Services, Inc. ("AT&T Services") and AT&T Mobility, LLC ("AT&T Mobility") (collectively, "AT&T") (Dkt. No. 444).

## I. INTRODUCTION

AT&T seeks a severance of GeoTag's claims against it and then a transfer of the severed action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). GeoTag does not oppose the severance of its claims against AT&T on the condition that GeoTag's claims against AT&T are consolidated for pretrial purposes under Rule 42 of the Federal Rules of Civil Procedure with the other co-pending lawsuits brought by GeoTag in this Court involving the same patent and issues.

AT&T's motion to transfer, however, should be denied. First and foremost, transferring GeoTag's claims against AT&T to the Northern District of Texas would create the existence of multiple lawsuits in different forums involving the same issues resulting in wasteful and duplicative litigation increasing the parties' costs and time spent contrary to the interests of justice and judicial economy. Furthermore, AT&T has not specifically identified any documents

or employees located in the proposed transferee forum, only a speculation of two possible prior art witnesses whom may reside within the Northern District. On the other hand, GeoTag has explicitly identified documents and several witnesses by name that are located in the Eastern District of Texas. As such, AT&T has not satisfied its heavy burden of showing that the transferee venue is clearly more convenient than the Eastern District of Texas.

## II. BACKGROUND

### A. Background of the GeoTag Litigation.

GeoTag's patent infringement claims against AT&T concern a single patent – U.S. Patent No. 5,930,474 (the "'474 patent") – and is among the patent infringement claims GeoTag has asserted against several hundred defendants in 19 lawsuits pending in this Court (the "GeoTag Litigations"). The `474 patent relates generally to the organization of geographical search technology made available through the Internet and its functionality, such as online yellow pages, "store locator" and job locator technology found on many websites and mobile applications.

The GeoTag Texas Litigations commenced in July 2010, when GeoTag filed suit against 14 defendants in a case styled *GeoTag Inc. v. Frontier Communications Corp., et al.*, No. 2:10-cv-00265, and Yellowpages.com LLC in a case styled *GeoTag Inc. v. Yellowpages.com LLC*, No. 2:10-cv-00272. Since December 2010, GeoTag has filed 16 additional lawsuits against infringers of the '474 patent. GeoTag asserted claims of patent infringement against AT&T Services and AT&T Mobility in *GeoTag Inc. v. Yellowpages.com LLC and* in *GeoTag Inc. v. Aromatique, Inc., et al.*, Case No. 2:10-cv-570, respectively.[1] All of the lawsuits comprising the GeoTag Litigations have been assigned to this Court since February 23, 2012.

---

[1] In March 2011, GeoTag filed a lawsuit against a vendor of store locator technology – Where 2 Get It, Inc. – after Where2GetIt filed a declaratory judgment action in Delaware while engaged in settlement discussions with GeoTag. The Delaware court subsequently transferred the Where2GetIt declaratory judgment action to this Court.

### B.     Background of Plaintiff GeoTag.

GeoTag is a provider of patented online and mobile applications focused around geolocation technology. GeoTag's technology is based on fundamental inventions described in the '474 Patent. The patented GeoTag technology is a spatial information management technology that makes possible a wide range of location enabled online and mobile applications. GeoTag's location based technology is used in web and mobile applications such as yellow pages, classifieds, search and advertising, dating sites, career locators, product locators, store locators, dealer locators, job search sites, dating search sites, event locators, daily deals and coupons, in store availability, in store pick-up and other applications. GeoTag offers companies providing these online and mobile applications the opportunity to license the GeoTag technology. *See* Ex. 1 - Declaration of John Veenstra at ¶ 3.

GeoTag is the owner of the '474 Patent. GeoTag is incorporated under the laws of the State of Texas with its headquarters and principal place of business located at 2591 Dallas Parkway, Suite 505, Frisco, Texas, located in the Eastern District of Texas. Veenstra Declaration at ¶ 4. GeoTag and its predecessors involved in the licensing and enforcement of the '474 patent have been located in the Eastern District of Texas since 2007. Veenstra Declaration at ¶ 5.

GeoTag's executive management consists of John Veenstra as Chief Executive Officer and Lawrence P. Howorth as President and Chief Financial Officer. Mr. Veenstra has resided in Plano, Texas, located in the Eastern District of Texas, since 2007. Mr. Howorth also resides in Plano, Texas, located in the Eastern District of Texas. Veenstra Declaration at ¶ 6.

Substantially all of GeoTag's business activities, including meetings of GeoTag's Board of Directors, take place in the Eastern District of Texas. Veenstra Declaration at ¶ 7. GeoTag

contracts with support services primarily in Texas rather than hiring full time employees depending on the particular requirements. Veenstra Declaration at ¶ 8.  GeoTag has employed and continues to employ several independent contractors in connection with its business. GeoTag currently employs at least five full time independent contractors at GeoTag's Frisco, Texas headquarters.  At certain times, depending on workload, GeoTag has employed from 6 to 12 full time independent contractors at its headquarters in the Frisco, Texas. Veenstra Declaration at ¶ 8.

GeoTag has hundreds of thousands of pages of physical and electronic documents relating to the '474 patent located at its Frisco, Texas headquarters.  These documents include documents relating to the conception, reduction to practice, patent prosecution, licensing and enforcement of the '474 patent. Veenstra Declaration at ¶ 9.

GeoTag and its predecessors have developed and marketed a fully functioning yellow pages website called Zland Yellow Pages, which is currently operated from GeoTag's headquarters in Frisco, Texas, and employs the technology covered by the `474 patent.  ZLAND Yellow Pages provides directory listing services and advertising to Texas businesses, organizations, local governments, community event organizers, churches, schools and universities.  While GeoTag operates on a multiple server platform, GeoTag's primary server is located in Dallas, TX. Veenstra Declaration at ¶ 10.

  **C.**  **Background of Defendant AT&T.**

Defendant AT&T is a Delaware corporation with its headquarters located at 208 S. Akard St., Dallas, Texas, 75202.  AT&T conducts business through two primary sales channels: (1) its retail Stores, and (2) Direct. According to its own "retail facts" sheet, AT&T operates 16,000 retail locations in the U.S., including kiosks, authorized dealers, third party retail locations

including 2,200 company-owned stores.[2] Many of these stores, and its corporate headquarters, are located in Texas. In fact, a search for stores (using the accused store locator) near Allen, TX in the Eastern District of Texas shows that there are more locations nearby than near Dallas, TX. *See* Ex. 2- *Moore Declaration* at ¶3, Exs. B & C. Furthermore, AT&T's servers which host the store locator functionalities are located in the Eastern District of Texas in Allen, TX as well as locations in the State of Washington. *Moore Declaration* at ¶2, Ex. A

### III.  ARGUMENT

#### A.  Legal Standard

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

Although the plaintiff's choice of forum is not a factor in the convenience analysis, it contributes to the defendant's burden of showing that the transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (Fed. Cir. 2008) ("*Volkswagen II*"). The plaintiff's choice of venue should rarely be disturbed unless the balance of convenience factors is strongly in favor of the defendants. *Volkswagen II*, 545 F.3d at 315; *Gulf Oil v. Gilbert*, 330 U.S. 507 (1947); *see also In re Affymetrix, Inc.*, Misc. No. 913, 2010 WL

---

[2] http://www.att.com/Common/merger/files/pdf/Retail_from_ATT-FS.pdf

1525010, at *1 (Fed. Cir. April 13, 2010) (*citing In re Nat'l Presto Indus.*, Inc., 347 F.3d 662, 663-64) ("[F]or transfer of venue to be appropriate, [defendant] must make a clear and indisputable showing that on balance, the convenience and interest of justice considerations strongly favor transfer."). Therefore, transfer is not appropriate unless the movant demonstrates good cause by showing that the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 315; *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012). When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

    **B.**    **Whether the Lawsuit Could be Brought in the Transferee Venue**

One threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. GeoTag does not dispute that its claims against AT&T could have been brought in the Northern District of Texas.

    **C.**    **Private Interest Factors**

### 1. *The Relative Ease of Access to Sources of Proof*

The Court must consider the physical location and volume of documents possessed by each party in relation to the transferee and transferor venues. *See Volkswagen II*, 545 F.3d at 314-15*; In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g., In re Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d at 1345.

In its motion, AT&T argues that "AT&T is not aware of any AT&T or third-party documents in the Eastern District of Texas," Dkt. No. 444 at 5. However, AT&T's answers to GeoTag's venue-related interrogatories tell a different story. *Moore Declaration* at ¶2, Ex. A. In its interrogatory responses, AT&T concedes that its servers, which host the accused store locator functionality, are not located in the Northern District of Texas. *Moore Declaration* at ¶2, Ex. A at 4. The servers containing the relevant accused instrumentality are stored in Allen, Texas, as well as in Bothell, Washington, and Lynwood, Washington. *Id*. Tellingly, in its motion, AT&T neglects to disclose that its servers which host the store locator functionality are located in the Eastern District of Texas.

Although AT&T has asserted that its offices are located in the proposed transferee forum

– the Northern District of Texas – it has not submitted any evidence that any appreciable number of documents are actually located at those offices.  AT&T blanketly asserts that "the lawyer overseeing the collection of evidence for AT&T works there," and that "collecting and preparing evidence for trial would [] be easier in Dallas than in Tyler." Dkt No. 444 at 5.  This vague and general statement amounts to, at best, a minimal showing that any documents relevant to this case are located at AT&T's headquarters in Dallas.  It is more likely that the most relevant proof for infringement will be found from the servers which host the accused instrumentality, the store locator, which are located in Allen, Texas and in Washington.

On the other hand, GeoTag, has shown that it has over hundreds of thousands of pages of physical and electronic documents located at its headquarters in the Eastern District of Texas. Veenstra Declaration at ¶ 9.  GeoTag is incorporated under the laws of the State of Texas with its headquarters and principal place of business located in the Eastern District of Texas. Veenstra Declaration at ¶ 4.  GeoTag and its predecessors involved in the licensing and enforcement of the '474 patent have been located in the Eastern District of Texas since 2007. Veenstra Declaration at ¶ 5.  The members of GeoTag's executive management reside in the Eastern District of Texas. John Veenstra, the CEO of GeoTag and lead inventor of the '474 Patent has resided in the Eastern District of Texas since 2007. Veenstra Declaration at ¶ 6.  GeoTag has employed and continues to employ several independent contractors in connection with its business at its Frisco, Texas headquarters.

GeoTag's connections to Texas and the Eastern District must be considered. *Azure Networks, LLC v. CSR, PLC*, Civil Action No. 6:11cv139 LED-JDL at 11 (E.D. Tex. June 25, 2012). "Weight given to the location of the plaintiffs' documents is determined by whether the plaintiffs are an ephemeral entity." *Stragent LLC v. Audi AG*, No. 6:10-cv-227, 2011 WL

2912907 at *6 (E.D. Tex. July 18, 2011) (*quoting NovelPoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010)). GeoTag's substantial connections with the Eastern District of Texas for over five years demonstrate that its presence in this forum is not ephemeral. *See Azure, supra*, at 11. Therefore, the location of GeoTag's relevant documents, which are all in the Eastern District of Texas, should be given weight in the transfer analysis. *See In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011) (taking into account non-ephemeral entity's documents and ties to the forum).

Thus, even looking at AT&T's evidence in the most favorable light, this factor weighs significantly against transfer.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. Importantly, the defendant bears the burden of identifying unwilling third party witnesses that would benefit from the transfer. *Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, slip op. at 5 (E.D. Tex. Apr. 19, 2012); s*ee also Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011); *NovelPoint*, 2010 WL 5068146, at*6 (E.D. Tex. Dec. 6, 2010) (noting that the Court will not base its conclusion on unidentified witnesses); *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011) (same).

AT&T alludes that two "likely witnesses about a key piece of prior art . . . [are] within

the subpoena power of only the northern district of Texas" and that "one of these witnesses is SuperMedia." Dkt. No. 444 at 5. However, this is not an identification of an actual witness. AT&T states that one third-party prior art witness currently resides in Arlington, Texas but intentionally does not divulge the identity of the witness to allow GeoTag or this Court to verify the accurateness of the witness' location.

Although these vaguely identified witnesses do not reside in the Eastern District of Texas within this Court's absolute subpoena power, this Court may nevertheless compel these witnesses to testify in this forum pursuant to FED. R. CIV. P. 45(c)(3)(C). *See Transdata, Inc. v. Tri-County Cooperative, Inc.*, Civil Action No 6:11cv46 LED-JDL at 6 (E.D. Tex. Aug. 11, 2011); *i2 Technologies, Inc. v. Oracle Corporation*, Civil Action No. 6:09 CV 194 at 5 (E.D. Tex. August 17, 2010).

Because AT&T fails to identify specifically any third party witnesses located in the Northern District of Texas and that any potential witnesses located are outside the subpoena power of this Court, this factor weighs against transfer or, at most, is neutral.

### 3. The Cost of Attendance for Willing Witnesses

All parties and witnesses must be considered in the analysis of this factor. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations omitted). Additionally, the convenience of non-party witnesses is given greater weight than that of party

witnesses. *Stragent*, 2011 WL 2912907, at *7; *NovelPoint*, 2010 WL 5068146, at *6; *see also BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009).

AT&T fails to identify any specific witnesses located in Dallas for whom it would be clearly more convenient if this case were transferred to that venue. AT&T mysteriously alludes to unidentified AT&T witnesses who live in Dallas, Texas; Bothell, Washington; Oklahoma City, Oklahoma; and Atlanta, Georgia. Dkt. No. 444 at 6. However, AT&T cannot specifically identify a single employee with relevant knowledge. In addition, as this Court declared in *Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012), "the Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *Id*. at 13. *See also NovelPoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011). In addition, AT&T only vaguely identifies "likely third-party witnesses in . . . California and Georgia . . . Illinois and California . . . and Massachusetts" who do not benefit anymore from a transfer to the Northern District. Dkt. No. 444 at 5.

In contrast, GeoTag has specifically identified three of its employees and/or independent contractors who reside in this forum who will be witnesses. *Moore Declaration at ¶ 4*.

Thus, this factor weighs slightly against transfer, or is neutral at worst.

### 4. Other Practical Problems

The goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen*

11

*v. Barrack*, 376 U.S. 612, 616 (1964). As a result, in appropriate circumstances, courts have analyzed the goal of preventing unnecessary inconvenience and expense under the rubric of "judicial economy." Furthermore, "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (*citing Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))(additional citation omitted); see also 28 U.S.C. §1404(a) ("For the convenience of the parties and witnesses, in the interest of justice . . . ). Thus, although judicial economy is not among the list of enumerated Gilbert factors, it is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice . . . [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent*." Continental Grain Co. v. The FBL585*, 364 U.S. 19, 26, 80 S. Ct. 1470, 4 L.Ed.2d 1540 (1960). Although patent infringement cases "may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *Volkswagen*, 566 F.3d at 1351.

Transfer of GeoTag's claims against AT&T to Dallas would not promote judicial economy in this case. Only AT&T and five other defendants among the hundreds of defendants in the GeoTag litigation have sought transfer of GeoTag's claims against them to another forum, and each of these defendants seek transfer to different forums. Therefore, transferring GeoTag's claims against AT&T and the other defendants who have filed transfer of venue motions would splinter this litigation into at least six separate actions pending in six separate forums, leaving

hundreds of defendants in the litigation pending in this forum.  Each of these separate actions will involve similar issues of claim validity, claim construction, claim scope, discovery, evidence, proceedings, and trial.  Transferring GeoTag's claims against AT&T would create duplicative, parallel proceedings on the same patent, unnecessarily wasting judicial resources and raising the specter of inconsistent adjudication. In short, transfer would squarely contradict the goals of §1404(a). *See Van Dusen*, 376 U.S. at 616 (opining that the goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense").  Thus, especially in view of the weak showing of private factors favoring transfer, this is a situation where judicial economy is a "paramount consideration in determining whether transfer is in the interest of justice." *Volkswagen II*, 565 F.3d at 1351.  Transfer should be denied for this reason alone.  This Court has denied motions to transfer on this ground in several cases with even less compelling circumstances than the GeoTag litigation. *See Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012); *Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment, LLC*, Civil Action No. 6:10-CV-607 LED-JDL (May 25, 2012).

### 5. Public Interest Factors

AT&T's argument that the local interest factor favors transfer is without merit. Although AT&T's headquarters is located in Dallas, GeoTag has its headquarters in the Eastern District of Texas and has a substantial presence in this forum.  Thus, citizens of the Eastern District of Texas have an interest in adjudicating this dispute, as much as or even more than the citizens of Dallas.  This factor is neutral. *Azure Networks, LLC v. CSR, PLC*, Civil Action No. 6:11cv139 LED-JDL at 15-16 (E.D. Tex. June 25, 2012).

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffmann-La Roche*, 587 F.3d at 1336. This factor is neutral. The median time from filing to trial in the Eastern District of Texas is nearly the same as that in the Northern District of Texas.

## CONCLUSION

The Court should sever GeoTag's claims against AT&T and simultaneously consolidate these claims against AT&T with the other GeoTag litigation pending before this Court for pretrial purposes. The Court should also deny AT&T's motion to transfer in the interests of justice and to promote judicial economy.

Dated: July 26, 2012                                    Respectfully submitted,

By: */s/ Hao Ni*
Hao Ni
Texas Bar No. 24047205
E-mail: hni@nilawfirm.com
Stevenson Moore
Texas Bar No. 24076573
Email: smoore@nilawfirm.com

Ni Law Firm, PLLC
3102 Maple Ave. Suite 400
Dallas, TX 75201
Telephone: 214/800-2208
Fax: 214/800-2209

**ATTORNEYS FOR PLAINTIFF
GEOTAG, INC.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this day, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: July 26, 2012                      /s/ *Hao Ni*
                                                               Hao Ni