# United States District Court

**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

GEOTAG, INC.

v.

| | |
|---|---|
| FRONTIER COMMUNICATIONS CORP., ET AL. | Case No. 2:10-cv-265 |
| YELLOWPAGES.COM, LLC, ET AL. | Case No. 2:10-cv-272 |
| GEORGIO ARMANI S.P.A., ET AL. | Case No. 2:10-cv-569 |
| AROMATIQUE, INC., ET AL. | Case No. 2:10-cv-570 |
| GUCCI AMERICA, INC., ET AL. | Case No. 2:10-cv-571 |
| STARBUCKS CORP, ET AL. | Case No. 2:10-cv-572 |
| RENT-A-CENTER, INC., ET AL. | Case No. 2:10-cv-573 |
| WESTERN UNION COMPANY, ET AL. | Case No. 2:10-cv-574 |
| ROYAL PURPLE, INC., ET AL. | Case No. 2:10-cv-575 |
| YAKIRA, LLC, ET AL. | Case No. 2:10-cv-587 |
| WHERE 2 GET IT INC., ET AL | Case No. 2:11-cv-175 |
| ZOOSK, INC. | Case No. 2:11-cv-403 |
| EYE CARE CENTERS OF AMERICA, INC. | Case No. 2:11-cv-404 |
| AMERCO, ET AL. | Case No. 2:11-cv-421 |
| 7-ELEVEN, INC., ET AL. | Case No. 2:11-cv-424 |
| SUNBELT RENTALS, INC. | Case No. 2:11-cv-425 |
| CLASSIFIED VENTURES, LLC | Case No. 2:11-cv-426 |
| CANON, INC. | Case No. 2:12-cv-43 |
| AMERICAN APPAREL INC. | Case No. 2:12-cv-436 |
| ABERCROMBIE & FITCH CO. | Case No. 2:12-cv-437 |
| AMERICAN EAGLE OUTFITTERS INC.. | Case No. 2:12-cv-438 |
| ANN INC. | Case No. 2:12-cv-439 |
| BURLEIGH POINT LTD. | Case No. 2:12-cv-441 |
| CATALOGUE VENTURES, INC. | Case No. 2:12-cv-442 |
| BURBERRY LIMITED | Case No. 2:12-cv-443 |
| BURLINGTON FACTORY WAREHOUSE CORPORATION | Case No. 2:12-cv-444 |
| CACHE INC. | Case No. 2:12-cv-445 |
| THE WILLIAM CARTER COMPANY | Case No. 2:12-cv-446 |
| CHARMING SHOPPES INC. | Case No. 2:12-cv-447 |
| CHICO'S FAS INC. | Case No. 2:12-cv-448 |
| CITI TRENDS INC. | Case No. 2:12-cv-449 |
| CLAIRE'S BOUTIQUES, INC. | Case No. 2:12-cv-450 |
| COLDWATER CREEK INC. | Case No. 2:12-cv-451 |
| DAVID'S BRIDAL INC. | Case No. 2:12-cv-452 |
| DEB SHOPS INC. | Case No. 2:12-cv-453 |
| DELIAS INC. | Case No. 2:12-cv-454 |
| DIESEL U.S.A. INC. | Case No. 2:12-cv-456 |
| DONNA KARAN INTERNATIONAL, INC. | Case No. 2:12-cv-457 |
| LVMH MOET HENNESSY LOUIS VUITTON, INC. | Case No. 2:12-cv-458 |
| DOTS, LLC | Case No. 2:12-cv-459 |
| DRAPER'S & DAMON'S INC. | Case No. 2:12-cv-460 |
| EDDIE BAUER LLC | Case No. 2:12-cv-461 |
| ESPRIT US RETAIL LIMITED | Case No. 2:12-cv-462 |
| FACTORY CONNECTION LLC | Case No. 2:12-cv-463 |
| THE FINISH LINE INC. | Case No. 2:12-cv-464 |

| | |
|---|---|
| FOREVER 21 RETAIL INC. | Case No. 2:12-cv-465 |
| FORMAL SPECIALISTS LTD. | Case No. 2:12-cv-466 |
| FREDRICK'S OF HOLLYWOOD STORES, INC. | Case No. 2:12-cv-467 |
| GROUPE DYNAMITE, INC. D/B/A GARAGE | Case No. 2:12-cv-468 |
| GUESS? RETAIL INC. | Case No. 2:12-cv-469 |
| H&M HENNES & MAURITZ LP | Case No. 2:12-cv-470 |
| HANESBRANDS INC. | Case No. 2:12-cv-471 |
| HOT TOPIC INC. | Case No. 2:12-cv-472 |
| HUGO BOSS FASHION INC. | Case No. 2:12-cv-473 |
| J. CREW GROUP INC. | Case No. 2:12-cv-474 |
| JIMMY JAZZ INC. | Case No. 2:12-cv-475 |
| JOS. A. BANK CLOTHIERS INC. | Case No. 2:12-cv-476 |
| ALCO STORES INC. | Case No. 2:12-cv-477 |
| FRED'S INC. | Case No. 2:12-cv-478 |
| BROWN SHOE COMPANY INC. | Case No. 2:12-cv-480 |
| COLLECTIVE BRANDS INC. | Case No. 2:12-cv-481 |
| CROCS INC. | Case No. 2:12-cv-482 |
| DSW INC. D/B/A DSW SHOE INC. | Case No. 2:12-cv-483 |
| FLEET FEET INC. | Case No. 2:12-cv-484 |
| GENESCO INC. | Case No. 2:12-cv-486 |
| HEELY'S INC. | Case No. 2:12-cv-487 |
| JUSTIN BOOT COMPANY | Case No. 2:12-cv-488 |
| AMERICAN GREETING CORPORATION | Case No. 2:12-cv-520 |
| HALLMARK CARDS, INC. | Case No. 2:12-cv-521 |
| HICKORY FARMS INC. | Case No. 2:12-cv-522 |
| SPENCER GIFTS LLC | Case No. 2:12-cv-523 |
| INTERNATIONAL COFFEE & TEA, LLC | Case No. 2:12-cv-524 |
| THINGS REMEMBERED, INC. | Case No. 2:12-cv-525 |
| THE YANKEE CANDLE COMPANY, INC. | Case No. 2:12-cv-526 |
| BOSE CORPORATION | Case No. 2:12-cv-527 |
| GUITAR CENTER INC. | Case No. 2:12-cv-528 |
| PROGRESSIVE CONCEPTS INC. | Case No. 2:12-cv-529 |
| 24 HOUR FITNESS WORLDWIDE INC. | Case No. 2:12-cv-530 |
| BALLY TOTAL FITNESS CORPORATION | Case No. 2:12-cv-531 |
| BARE ESCENTIALS INC. | Case No. 2:12-cv-532 |
| BIOSCRIP INC. | Case No. 2:12-cv-533 |
| CRABTREE & EVELYN | Case No. 2:12-cv-534 |
| CURVES INTERNATIONAL INC. | Case No. 2:12-cv-535 |
| GOLD'S GYM INTERNATIONAL INC. | Case No. 2:12-cv-536 |
| GREAT CLIPS INC. | Case No. 2:12-cv-537 |
| L.A. FITNESS INTERNATIONAL INC. | Case No. 2:12-cv-538 |
| LIFE TIME FITNESS INC. | Case No. 2:12-cv-539 |
| M.A.C. COSMETICS INC. | Case No. 2:12-cv-540 |
| MERLY NORMAN COSMETICS | Case No. 2:12-cv-541 |
| VITAMIN COTTAGE NATURAL FOOD MARKETS, INC. | Case No. 2:12-cv-542 |
| REGIS CORPORATION | Case No. 2:12-cv-543 |
| SALLY BEAUTY SUPPLY LLC | Case No. 2:12-cv-544 |
| SEPHORA USA INC. | Case No. 2:12-cv-545 |
| TONI&GUY USA, LLC | Case No. 2:12-cv-546 |
| ULTA SALON, COSMETICS & FRAGRANCE, INC. | Case No. 2:12-cv-547 |
| VITAMIN SHOPPE INDUSTRIES, INC. | Case No. 2:12-cv-548 |
| EYEMART EXPRESS, LTD. | Case No. 2:12-cv-549 |
| LUXOTTICA RETAIL NORTH AMERICA INC. | Case No. 2:12-cv-550 |
| NATIONAL VISION INC. | Case No. 2:12-cv-551 |

| U.S. VISION INC. | Case No. 2:12-cv-552 |
|---|---|
| JOS. A. BANK CLOTHIERS INC. | Case No. 2:12-cv-554 |
| BUTH-NA-BODHAIGE INC. | Case No. 2:12-cv-555 |
| PSP GROUP, LLC | Case No. 2:12-cv-556 |
| WHERE 2 GET IT INC. | Case No. 2:12-cv-149 |
| | |
| v. | |
| | |
| GEOTAG, INC. | |

## ORDER ON MOTIONS FOR PROTECTIVE ORDER

Before the Court are the parties' motions for entry of an amended protective order.[1]

Having considered the parties' arguments, the undisputed facts, and the applicable law, the Court

**GRANTS IN PART** and **DENIES IN PART** the motions.

---

[1] This Order applies to the following motions: Plaintiff's and Defendants' Motions for Entry of First Amended Protective Order in cause in Case Nos. 2:10-cv-265 (Doc. Nos. 321, 322); 2:10-cv-272 (Doc. Nos. 125, 126); 2:10-cv-569 (Doc. Nos. 169, 170); 2:10-cv-570 (Doc. Nos. 525, 526); 2:10-cv-571 (Doc. Nos. 433, 434); 2:10-cv-572 (Doc. Nos. 469, 470); 2:10-cv-573 (Doc. Nos. 333, 334); 2:10-cv-574 (Doc. Nos. 603, 604); 2:10-cv-575 (Doc. Nos. 541, 542); 2:10-cv-587 (Doc. Nos. 349, 350); 2:11-cv-175 (Doc. Nos. 328, 329); 2:11-cv-403 (Doc. Nos. 77, 78); 2:11-cv-404 (Doc. Nos. 417, 418, 419); 2:11-cv-421 (Doc. Nos. 65, 66); 2:11-cv-424 (Doc. Nos. 68, 69); 2:11-cv-425 (Doc. Nos. 58, 59); 2:11-cv-426 (Doc. Nos. 64, 65); 2:12-cv-43 (Doc. Nos. 76, 77); 2:12-cv-149 (Doc. Nos. 65, 66); 2:12-cv-436 (Doc. Nos. 31, 35); 2:12-cv-437 (Doc. Nos. 30, 31); 2:12-cv-438 (Doc. Nos. 29, 30); 2:12-cv-439 (Doc. Nos. 31, 32); 2:12-cv-441 (Doc. Nos. 33, 34); 2:12-cv-442 (Doc. Nos. 31, 32); 2:12-cv-443 (Doc. Nos. 35, 36); 2:12-cv-444 (Doc. Nos. 31, 32); 2:12-cv-445 (Doc. Nos. 30, 31); 2:12-cv-446 (Doc. Nos. 31, 32); 2:12-cv-447 (Doc. Nos. 29, 30); 2:12-cv-448 (Doc. Nos. 31, 32); 2:12-cv-449 (Doc. Nos. 31, 32); 2:12-cv-450 (Doc. Nos. 30, 31); 2:12-cv-451 (Doc. Nos. 32, 33); 2:12-cv-452 (Doc. Nos. 29, 30); 2:12-cv-453 (Doc. No. 25); 2:12-cv-454 (Doc. Nos. 30, 33); 2:12-cv-456 (Doc. Nos. 31, 32); 2:12-cv-457 (Doc. Nos. 33, 34); 2:12-cv-458 (Doc. Nos. 33, 34); 2:12-cv-459 (Doc. Nos. 30, 31); 2:12-cv-460 (Doc. Nos. 30, 31); 2:12-cv-461 (Doc. Nos. 32, 33); 2:12-cv-462 (Doc. Nos. 30, 31); 2:12-cv-463 (Doc. Nos. 30, 31); 2:12-cv-464 (Doc. Nos. 31, 32); 2:12-cv-465 (Doc. Nos. 30, 31); 2:12-cv-466 (Doc. Nos. 29, 30); 2:12-cv-467 (Doc. Nos. 32, 33); 2:12-cv-468 (Doc. Nos. 30, 31); 2:12-cv-469 (Doc. Nos. 29, 30); 2:12-cv-470 (Doc. Nos. 31, 32); 2:12-cv-471 (Doc. Nos. 30, 31); 2:12-cv-473 (Doc. Nos. 31, 34); 2:12-cv-473 (Doc. Nos. 30, 31); 2:12-cv-474 (Doc. Nos. 36, 38); 2:12-cv-475 (Doc. Nos. 30, 31); 2:12-cv-476 (Doc. Nos. 29, 30); 2:12-cv-477 (Doc. Nos. 30, 31); 2:12-cv-478 (Doc. Nos. 35, 38); 2:12-cv-479 (Doc. Nos. 30, 31); 2:12-cv-480 (Doc. Nos. 31, 32); 2:12-cv-481 (Doc. Nos. 31, 32); 2:12-cv-482 (Doc. Nos. 30, 31); 2:12-cv-483 (Doc. Nos. 30, 31); 2:12-cv-484 (Doc. No. 28); 2:12-cv-486 (Doc. Nos. 30, 31); 2:12-cv-487 (Doc. Nos. 30, 31); 2:12-cv-488 (Doc. No. 26); 2:12-cv-520 (Doc. Nos. 27, 28); 2:12-cv-521 (Doc. Nos. 28, 29, 30); 2:12-cv-522 (Doc. Nos. 26, 27); 2:12-cv-523 (Doc. Nos. 30, 31); 2:12-cv-524 (Doc. Nos. 27, 28); 2:12-cv-525 (Doc. Nos. 26, 27); 2:12-cv-526 (Doc. Nos. 28, 29); 2:12-cv-527 (Doc. Nos. 28, 29); 2:12-cv-528 (Doc. Nos. 27, 28); 2:12-cv-529 (Doc. Nos. 26, 27); 2:12-cv-530 (Doc. Nos. 27, 28); 2:12-cv-531 (Doc. Nos. 24, 25); 2:12-cv-532 (Doc. Nos. 26, 27); 2:12-cv-533 (Doc. No. 27); 2:12-cv-534 (Doc. Nos. 27, 28); 2:12-cv-535 (Doc. Nos. 27, 28); 2:12-cv-536 (Doc. Nos. 27, 28); 2:12-cv-537 (Doc. Nos. 27, 28); 2:12-cv-538 (Doc. Nos. 28, 29); 2:12-cv-539 (Doc. Nos. 27, 28); 2:12-cv-540 (Doc. Nos. 27, 28); 2:12-cv-541 (Doc. Nos. 28, 29); 2:12-cv-542 (Doc. Nos. 27, 28); 2:12-cv-543 (Doc. Nos. 30, 31); 2:12-cv-544 (Doc. Nos. 28, 29); 2:12-cv-545 (Doc. Nos. 27, 28); 2:12-cv-546 (Doc. Nos. 27, 28); 2:12-cv-547 (Doc. Nos. 27, 28); 2:12-cv-548 (Doc. Nos. 28, 29); 2:12-cv-549 (Doc. Nos. 27, 28); 2:12-cv-550 (Doc. Nos. 27, 28); 2:12-cv-551 (Doc. Nos. 30, 31); 2:12-cv-552 (Doc. Nos. 27, 28); 2:12-cv-554 (Doc. No. 23); 2:12-cv-555 (Doc. Nos. 27, 28); 2:12-cv-556 (Doc. Nos. 27, 28); and 2:12-cv-557 (Doc. Nos. 27, 28).

## I.      BACKGROUND

This litigation involves alleged patent infringement of U.S. Patent No. 5,930,474 (the

'474 patent) titled "Internet Organizer for Accessing Geographically and Topically Based

Information." This litigation includes a large number of related patent infringement cases. In

these cases, Plaintiff accuses several hundred defendants of infringing U.S. Patent No. 5,930,474

by providing various locator services on their commercial websites. In general, the technology

allows consumers to visit Defendants' websites to obtain a map and listing of nearby locations or

services. The parties in this litigation acknowledge that the discovery contains highly

confidential information. Accordingly, the parties have asked the Court to enter a protective

order to govern discovery.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that "for good cause shown" the Court may

enter any order which justice so requires "to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense" of proposed discovery or disclosure.

The party seeking a protective order has the burden of proving good cause exists. *In re Deutsche

Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). When the parties agree to the

implementation of a protective order but disagree on specific terms, the party seeking to limit

discovery shoulders the burden of establishing that good cause exists for the protection of that

information. *See Document Generation Corp. v. Allscripts, LLC*, No. 6:08-CV-479, 2009 WL

1766096, at *2 (E.D. Tex. June 23, 2009).

## III.      DISCUSSION

The parties agree to most terms in their proposed protective order. But the parties raise

the following issues for the Court to resolve: (1) where source code will be made available; (2)

what kinds of media will be allowed in the secure source code review room; (3) the format of source code production; (4) the tools available for source code analysis; (5) the burden for denying production of additional source code beyond the agreed page limitations; and (6) the scope of the patent prosecution bar.

### A.  Location for Source Code

Section 5(a) of the parties' proposed protective order deals with the location for the production of source code. The parties agree that source code can be produced at a secure third party facility in the Dallas, Texas metropolitan area or at a location mutually agreed upon by the receiving and producing parties. Defendants further propose that source code can be made available at the office of counsel for the producing party or as permitted under the Federal Rules of Civil Procedure. Alternatively, Plaintiff proposes that source code can be made available at the office of counsel for the producing party in the Dallas, Texas metropolitan area or in the Eastern District of Texas.

Plaintiff's proposal functionally limits the location of source code to the Dallas, Texas metropolitan area or the Eastern District of Texas to the extent the parties are unable to mutually agree to a location. Plaintiff argues that such a restriction is appropriate because it creates more efficient travel for Plaintiff to review the code. Plaintiff claims that Defendants' proposal is unnecessarily inefficient. Plaintiff believes that significant resources would be wasted by having to travel around the country to review the code.

Given the circumstances of this case, the Court finds Plaintiff's proposal overly restrictive. The Court believes it is reasonable for Defendants to provide source code at the office of the producing party or where it is kept in the ordinary course of business. *See* Fed. R. Civ. P. 34(b)(2)(E)(i). Shifting the travel burden from Plaintiff to Defendants is unwarranted in this

action. Plaintiff voluntarily chose to pursue this litigation against a significant number of defendants. Because Plaintiff created this logistical burden, it must now bear the impact.

As defendants highlight, Plaintiff's counsel is spread across the country. Plaintiff's current counsel is located in Dallas, Texas, Chicago, Illinois, and San Jose California. Accordingly, much of the source code is already at locations convenient to Plaintiff's counsel.

For the foregoing reasons, the Court **DENIES** Plaintiff's additional proposal that source code can be made available at the office of counsel for the producing party in the Dallas, Texas metropolitan area or in the Eastern District of Texas. The Court **GRANTS** Defendants additional proposal that source code can be made available at the office of counsel for the producing party or as permitted under the Federal Rules of Civil Procedure.

### B.  Media Devices in Secure Source Code Review Room

Section 5(a)(2) of the parties' proposed protective order discusses the media that may enter the secure source code room. Defendants propose that no recordable media devices, including computers or cellular telephones with cameras, be permitted in the secure room housing the stand-alone source code computer. Given the highly confidential nature of their source code, Defendants do not want to create even a mere possibility of inadvertent copying of the code. Defendants are willing to allow the use of cellular telephones and note-taking computers near the secure room, but not within it.

Plaintiff requests that the receiving party be allowed to bring into the secure room a cellular telephone and a note-taking computer disconnected from the internet. Rather than taking handwritten notes in isolation, Plaintiffs argues that allowing a cellular telephone and note-taking computer will allow for more efficient review of the source code. Additionally, Plaintiff alleges

that the remainder of the protective order supplies the necessary protections to preclude the possibility of inadvertent copying or disclosure.

The Court is unconvinced that sufficient review of Defendants' source code requires a cellular telephone or note-taking computer. In light of the highly confidential nature of the source code, allowing these devices within the secure room would significantly increase the possibility of inadvertent disclosure. Plaintiff has not shown any necessity for these devices. In this instance, the interest of protecting the source code far outweighs the convenience of allowing a cellular telephone or note-taking computing within the secure source code room.

For the foregoing reasons, the Court **DENIES** Plaintiff's request that cellular telephones and a note-taking computer be allowed within the secure source code room. The Court **GRANTS** Defendants request to prohibit these items from any secure source code room.

### C.  *Format of Source Code*

Section 5(c) of the parties' proposed protective order relates to the format of source code production. Defendants propose that all source code be produced in electronic native format, to the extent it exists in that format and can be produced or made available in that format without undue burden. Plaintiff presents a modified version wherein the source code produced is in compilable form.

Plaintiff argues that source code in compilable form would allow it to be able to execute the code to observe how it operates. Defendants contend that producing the code in compilable form would require them to produce all code related to their websites. Defendants conclude that such a task would be unduly burdensome. Defendants further allege that the locator services on their websites work in conjunction with third-party websites. Thus, Plaintiff would be unable to

observe proper execution of the code. Plaintiff believes it would still be able to observe how the code operates and executes even without the interaction with the third-party websites.

The Court finds disclosing source code in electronic native format is sufficient in this case. Generally, a party need not produce source code in any other format than electronic native form. *See generally* Fed. R. Civ. P. 34(b)(2)(E)(ii)–(iii) ("[A] party must produce [electronically stored information] in a form or forms in which it is ordinarily maintained or in a reasonably useable form or forms" and "[a] party need not produce the same electronically stored information in more than one form"). Here, the Court sees no compelling reason to deviate from this principle.

For the foregoing reasons, the Court **DENIES** Plaintiff's request that source code be made available in compilable form. The Court **GRANTS** Defendants request that all source code be produced in electronic native format, to the extent it exists in that format and can be produced or made available in that format without undue burden.

### D.  The Tools Available for Source Code Analysis

Section 5(f) of the parties' proposed protective order addresses the tools that will be available when analyzing the source code. Plaintiff requests that tools for analysis are essential to understanding how the code executes and operates. Specifically, Plaintiff requests that the tools Visual Studio and Understand be available on the standalone computers containing the source code. Plaintiff contends that without these tools, it cannot sufficiently perform its infringement analysis.

Defendants agree to install viewing and searching tools, but not analysis tools. Defendants broadly dismiss Plaintiff's request as inappropriate without any detailed discussion.

The Court finds that analysis tools are necessary for Plaintiff to properly conduct its infringement analysis. Although Defendants bear the burden to support their proposed limitation, they provide no compelling rationale for denying Plaintiff's request.

For the foregoing reasons, the Court **GRANTS** Plaintiff's request for the source code analysis tools Visual Studio and Understand. The Court **DENIES** Defendants request to limit source code tools to viewing and searching programs.

### E.   The Burden for Denying Additional Source Code Production

Section 5(g)(1) of the parties' proposed protective order deals with printing limitations on source code. The parties are in agreement that the receiving party shall be permitted to print continuous blocks of source code not in excess of 35 pages or 500 pages in total. The parties disagree on who should bear the burden when a parties request additional pages. Plaintiff argues that it should be the producing party that should have the burden of demonstrating why it should not comply with the request. Defendants argue that it should be the receiving party who shoulders the burden of showing good cause for the additional request.

The Court finds that it should be the producing party that bears the burden of establishing why it should not comply with the request for additional pages. It is well established that the party seeking to limit discovery carries the burden of showing good cause. *See Document Generation Corp*, 2009 WL 1766096, at *2; *Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 61 (W.D.N.Y. 2003) ("[O]nce the party seeking discovery has established that the demand seeks relevant information, the burden is upon the party seeking non-disclosure or a protective order to show good cause." (quotations omitted)). Here, the Court is not persuaded to shift the burden to the receiving party to demonstrate good cause for the request. But the Court nevertheless expects that any additional pages requested by the receiving party be made in good faith.

For the foregoing reasons, the Court **GRANTS** Plaintiff's proposal that it is the producing party that shall have the burden of demonstrating why it should not comply with a request for additional pages. The Court **DENIES** Defendants request that it should be the receiving party who must show good cause for its request.

### F.  Patent Prosecution Bar

Section 7 of the parties' proposed protective order covers the patent prosecution bar. The parties' disagreements regarding this section stem from the scope of the restriction. The parties first dispute to whom the prosecution bar should be applied. Plaintiff contends that it should apply to all parties in this litigation who review highly sensitive information. Defendants propose that the bar apply only to Plaintiff's counsel or any individual associated with Plaintiff who reviews Defendants' highly sensitive information.

As justification for its proposition, Plaintiff argues that it currently has a product, ZLand.com which includes proprietary code relevant to the patent-in-suit. But Plaintiff provides no further explanation of the relevance of its product to the asserted patent or this case. Plaintiff's statement that its product is merely relevant to this suit is an insufficient basis for implementing the prosecution bar to the several hundred attorneys representing Defendants. The Court is unwilling to place such an immense burden on Defendants' counsel without a detailed explanation for its justification. Because Plaintiff has failed to show good cause to support its proposal, the Court finds that the prosecution bar should be limited to Plaintiff's counsel who review Defendants' highly sensitive information.

The parties also disagree on whether the prosecution bar should apply to reexamination proceedings. Plaintiff believes that the bar should not apply to reexaminations. Defendants disagree. The Court finds *Mirror Worlds, LLC v. Apple, Inc.*, No. 6:08-CV-88, 2009 WL

2461808, at *1–2 (E.D. Tex. Aug. 11, 2009) instructive in this case. The facts and circumstances in this case mimic those presented in *Mirror Worlds*. As in *Mirror Worlds*. Defendants' proposal with respect to reexamination includes a number of limitations to prevent the inadvertent use or dissipation of Defendants' highly sensitive information. The limitations include that Plaintiff's outside counsel shall not prosecute the reexamination, shall not reveal directly or indirectly any of Defendants' highly sensitive material to any reexamination counsel, and shall not use any of Defendants' highly sensitive material for any purpose other than the instant litigation. *See Mirror Worlds, LLC*, 2009 WL 2461808, at *1.

Defendants' concern about the use of its highly sensitive information in reexamination is undercut by the fact that claims can only be narrowed, not broadened, during reexamination. *See id.* at 2. Given the large number of defendants in this case, it is highly unlikely that Plaintiff would seek to narrow its claims to cover any single defendant at the risk of excluding the remaining accused infringers. *See id.*

The Court is unconvinced that the burden of requiring Plaintiff to obtain separate counsel for reexamination outweighs any risk of inadvertent use or disclosure of Defendants' highly sensitive material. Defendants have failed to show good cause to justify the extension of the prosecution bar to reexamination proceedings.

For the foregoing reasons, the Court **GRANTS** Defendants' proposal that the prosecution bar should be limited to Plaintiff's counsel or any individual associated with Plaintiffs who reviews a producing party's highly sensitive material. Additionally, the Court **GRANTS** Plaintiff's proposal that the prosecution bar is inapplicable to reexamination proceedings.

IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** the motions for protective order. Furthermore, the parties are **ORDERED** to submit to the Court a revised proposed protective order incorporating all of the rulings discussed above. The proposed order is due within **_10 days_** of the date of this order.

**It is SO ORDERED.**

**SIGNED this 7th day of January, 2013.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE